1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10    UNITED STATES OF AMERICA,                    No. CR 05-00167 WHA

11              Plaintiff,

12        v.                                        **ORDER GRANTING IN PART
                                                    AND DENYING IN PART
13    EDGAR DIAZ, RICKEY ROLLINS,                   MOTIONS FOR BILLS OF
      DON JOHNSON, ROBERT CALLOWAY,                 PARTICULARS**
14    DORNELL ELLIS, EMILE FORT,
      CHRISTOPHER BYES, PARIS
15    RAGLAND, RONNIE CALLOWAY,
      ALLEN CALLOWAY, and REDACTED
16    DEFENDANTS Nos. ONE & TWO,

17              Defendants.

18    _____/

19                                    **INTRODUCTION**

20           In this action alleging racketeering conspiracies, drug dealing and violent crime, all

21    defendants who have been arraigned, except Allen Calloway and Christopher Byes, move for

22    bills of particulars or join in such motions.  For the reasons stated below, most of the requests

23    are not justified; others are.  Some of the motions therefore are **DENIED**.  Others are **GRANTED**

24    **IN PART AND DENIED IN PART**.[1]

25

26

27    ──────────────────

28           [1] The motions were made by the following defendants, with the names of those joining in each motion
      in parentheses after the name of the movant: 1) Rickey Rollins (Emile Fort); 2) Don Johnson (Rollins, Fort,
      Robert Calloway and Edgar Diaz); 3) Robert Calloway (Rollins, Fort, Ronnie Calloway, Diaz and Johnson); 4)
      Emile Fort (Rollins, Robert Calloway, Ronnie Calloway and Diaz); 5) Dornell Ellis (Rollins, Fort, Robert
      Calloway, Ronnie Calloway and Johnson); 6) Paris Ragland (Fort, Ronnie Calloway).  The joinder of
      Christopher Byes was stricken because it was filed so late.

United States District Court
For the Northern District of California

**STATEMENT**

The second superceding indictment accuses twelve men of crimes related to a purportedly criminal organization, the Down Below Gang, in San Francisco. The indictment covers a seven-year period and includes allegations of six murders and six attempted murders. The grand jury accuses the men of three main conspiracies and alleges numerous acts in furtherance of the conspiracies: 73 overt acts in the narcotics conspiracy (count one), 57 overt acts in the firearms conspiracy (count two) and 30 racketeering acts in the racketeering conspiracy (count three). In addition, defendants face accusations of conspiracy to murder a witness. The substantive offenses include several offenses in aid of racketeering: murders, attempted murder, threats of murder, conspiracy to commit murder and armed assault. The grand jury also accuses defendants of arson; unlawful use of communications facilities; dealing cocaine, marijuana, heroin and ecstasy; and using, carrying and possessing firearms during and in relation to violent crimes. All told, the indictment contains 86 counts.

Two of the defendants have not been apprehended. Their names are redacted from the version of the second superceding indictment that is public. The grand jury made special findings against eight defendants (Second Superceding Indictment ("SSI") 86–95 (special findings)). By making special findings, the grand jury gave the government grounds to seek the death penalty against those eight defendants if they are convicted. *See* 18 U.S.C. 3591(a) (authorizing death penalty). The government, however, has filed notice that it will not seek execution of three of those eight defendants: Don Johnson, Rickey Rollins and Dornell Ellis.[2]

The government has provided substantial evidence that the Down Below Gang may take violent action against persons cooperating with law-enforcement authorities. Given this danger of attacks on witnesses, the Court authorized the government to redact from documents turned over to defendants and their counsel the names of anyone in danger (Protective Order for Witness Security, Docket No. 470, ¶ 2). Since the motions for bills of particular were filed, the Court issued an order that would allow defense counsel and investigators access to more

---

[2] The indictment makes accusations against Ricky Rollins, whereas his attorneys spell his given name "Rick*ey*." On the assumption that the defendant's counsel know how to spell his name, this order adopts that spelling.

United States District Court
For the Northern District of California

1    identifying information about witnesses if they agree to abide by a protective order.  The

2    government, however, notified the Court that it will not comply with the order.  Sanctions

3    proceedings are underway.  Because of the government's noncompliance, the orders may not

4    result in any more information flowing to defendants — at least not immediately.

5    **ANALYSIS**

6        By their motions for bills of particulars, defendants seek greater information about their

7    alleged criminal acts.  Each movant provided a list of information that they want the

8    government to provide.  They claim this information is required to satisfy the constitutional

9    guarantees of (1) due process of law, (2) a grand-jury indictment, (3) protection from double

10   jeopardy and (4) the provision of information to the accused on the "nature and cause" of the

11   charges.[3]

12       A court may direct the government to file a bill of particulars.  FRCrP 7(f).  The purpose

13   of such a document is to "apprise the defendant of the specific charges being presented to

14   minimize danger of surprise at trial, to aid in preparation and to protect against double

15   jeopardy."  *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).  "These purposes are

16   served if the indictment itself provides sufficient details of the charges and if the Government

17   provides full discovery to the defense."  *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir.

18   1984).  Decisions on motions for bills of particulars are committed to the trial court's sound

19   discretion. *Tai v. United States*, 273 U.S. 77, 82 (1927).  Trial courts' discretion in deciding

20   such motions is particularly broad: an extensive review of reported Ninth Circuit and Supreme

21   Court decisions revealed only one holding that such discretion had been abused, in *Samuel v.*

22   *United States*, 169 F.2d 787, 791 (9th Cir. 1948).  In all other decisions, the district court's

23   order was upheld.

24       Defendants in the instant action joined in the motions for bills of particulars made by

25   one another.  To the extent one defendant joined in another defendant's motion, the joining

26   defendant is only entitled to the particular information demanded by the movant.  For instance,

27

28   _____
     [3] Defendant Emile Fort also argues that a bill is required to satisfy the Eighth Amendment.  It is unclear
     which provision of the Eighth Amendment he claims the bill will satisfy: the ban on excessive fines, the
     prohibition of excessive bail or the proscription of cruel and unusual punishment.

**United States District Court**
For the Northern District of California

1   defendant Rickey Rollins asked to know what gun he used in connection with count 64. Emile

2   Fort joined in Rollins's motion. By doing so, Mr. Fort joined in the request for information on

3   the gun used in connection with count 64. He did not thereby ask about the guns connected

4   with the counts charging Mr. Fort himself. This distinction is not merely technical. Each

5   defendant has a different record as to what he knows from the indictment and discovery. One of

6   them might be able to justify a need for more information while another cannot because he

7   already received enough. For example, Mr. Rollins may not have received discovery on the gun

8   used, while Mr. Fort did. For this reason, joinder was not enough in the context of the instant

9   motion to get individually tailored information.

10          This order now turns to defendants' particular requests

11      **1.    NAMES.**

12          **A.    Names of unindicted conspirators.**

13          Several defendants ask for an order compelling the government to provide the names of

14   all unindicted conspirators to whom the grand jury referred in the indictment (Br. 4–6, Docket

15   No. 405; Br. 4–6, Docket No. 407). The names of witnesses in this action are closely guarded

16   secrets that protect them from potential retaliation and violence. This category, "witnesses,"

17   includes, of course, all conspirators. To the extent that defendants' requests seek names that are

18   properly withheld pursuant to the Court's previous orders, the requests must be denied.

19   Furthermore, it is not an abuse of discretion to deny requests to know the names of conspirators

20   if the names of a sufficient number of conspirators have been revealed to sustain the charges.

21   *United States v. Burt*, 765 F.2d 1364, 1367 (9th Cir. 1985). Such is the case here. This request

22   therefore is denied.

23          This ruling also applies to defendant Paris Ragland's request for physical descriptions of

24   conspirators and to request for the names of "redacted defendants numbers one and two." In

25   addition, the names of those two redacted defendants are properly withheld to facilitate their

26   capture. *See* FRCrP 6(e)(4) (indictment may be kept secret until defendant in custody).

27          **B.    Names of victims of count eighteen, conspiracy to murder.**

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    Count eighteen alleges that four defendants conspired to murder members of the Up the

2    Hill gang and, in furtherance of the conspiracy, each went to a particular location while in

3    possession of a firearm. One of the men is alleged to have fired a weapon at members of the

4    rival set. Defendant Rollins is alleged to have attempted to fire his weapons at them (SSI

5    62–63). Mr. Rollins asks for the names of the victims. The government has provided the names

6    of many of the victims of the alleged crimes. It is unclear why it did not do so as to count

7    eighteen. The government must provide the names of the intended victims of the conspiracy to

8    murder alleged in count eighteen. If it does not know the names, then it must supply as much

9    identifying information about the victims as it has.

10    Also related to this count, Mr. Rollins asked for a description of the firearm he

11    attempted to fire, the meaning of "attempted to fire" and whether "drove in a vehicle" means

12    "drove a vehicle" or "was a passenger in a vehicle." None of these details are necessary in

13    order for Mr. Rollins to prepare his defense.

14    **2.    DATES.**

15        **A.    Dates that defendants and other became members of conspiracies.**

16    Defendants are not entitled to the exact dates on which they or alleged conspirators

17    became members of the conspiracies. These details are generally not within the government's

18    knowledge. To require this information, and potentially to limit the proof to that time, would

19    hamper prosecutions unnecessarily. *Rubio v. United States*, 22 F.2d 766, 767–68 (9th Cir.

20    1927). In any case, the conspiracy counts are replete with dates. The periods during which the

21    conspiracies existed are alleged in the complaint. As to the second count, the dates of each

22    conspirator's membership are alleged. So are the dates of each of the seventy-three overt acts in

23    count one and each of the fifty-seven overt acts in count three. Most of the thirty racketeering

24    acts alleged in count two also have specific dates attached to them. These dates put defendants

25    on adequate notice of the dates of the conspiracy they allegedly joined.

26    This ruling also answers Mr. Johnson's request for a statement by the government of

27    whether he was a conspirator during periods of time when he allegedly was in juvenile custody.

28    It similarly addresses Mr. Rollins's request for the date on which he joined the Down Below

**United States District Court**
For the Northern District of California

1  Gang.  Those requests are simply other ways to formulate a request about when the relevant

2  defendant joined the conspiracy.

3       Defendants also ask for the dates on which particular members' participation in the

4  conspiracies ended, if ever.  Just as information as to the exact dates of a person joining a

5  conspiracy is too detailed and is unlikely to be held by the government, so too is information

6  about when they left the conspiracy.  The request is denied.

7       Finally, Mr. Johnson asks to know at what place and through what act he joined the

8  racketeering conspiracy, where he completed his participation and how he became a member of

9  the firearms conspiracy in count three.  Similarly, Mr. Ragland wants to be told the

10  "circumstances under which, and the words or conduct by means of which" he entered into the

11  conspiracies alleged in counts one and three.  Again, similarly, Mr. Rollins asks for the

12  locations where he and others conspired in counts one and three.  This information is far too

13  specific to require.  The indictment provides sufficient notice of location.  All the acts are

14  alleged to have taken place in the Northern District of California.  The narcotics conspiracy was

15  alleged to have occurred in San Francisco "but with specific emphasis on the area in and around

16  the Sunnydale public housing complex, in San Francisco's Visitacion Valley neighborhood,

17  including, but not limited to, an area bounded by Hahn Street to the East, Brookdale Street to

18  the West, Sunnydale Avenue to the North and Blythedale Street to the South" (SSI 4, 40).  This

19  is enough for the narcotics conspiracy.  As to the racketeering conspiracy, the indictment states

20  that the enterprise was located in the Visitacion Valley neighborhood.  As to the conspiracy to

21  commit witness tampering (racketeering act 30(A) and counts 27, 28), Mr. Ellis is alleged to

22  have conspired by telephone with Mr. Fort while the latter was in San Francisco County Jail.

23  To the extent defendants seek more information, these requests are denied for the same reasons

24  as those described immediately above: the information is too detailed, not within the typical

25  knowledge of the government and might limit the government unfairly.

26            **B.      Dates defendants met or communicated with conspirators.**

27       This request, made by defendant Ellis, for the dates when he met or communicated with

28  conspirators as to counts one, two, three, twenty-seven and twenty-eight is unreasonably broad

1  (Br. 7, 9–12, Docket No. 413). Defendants do not need the dates of every communication to

2  prepare to fight a conspiracy charge. This ruling also applies to Mr. Ellis's requests for the

3  dates of "all acts and statements" in furtherance of the conspiracies (*id.* 7–8, 10–12).

4      **3.    FURTHER PARTICULARS.**

5          **A.    Particulars of murders, attempted murders and robberies alleged**

6  **against Mr. Ellis.**

7          Mr. Ellis seeks particulars about the murders, attempted murders and robberies he

8  allegedly committed as part of his role in the racketeering enterprise charged in count two (SSI

9  23). Elsewhere, Mr. Ellis is accused of murdering Beverly Robinson. He is accused of

10 participating in a conspiracy to murder Jamaar Jackson. These sections provide sufficient

11 information about any murder or attempted-murder accusations. Mr. Ellis is not, however,

12 accused elsewhere in the indictment of robbery. If the government plans to prove that Mr. Ellis

13 robbed someone as part of the racketeering conspiracy, it must supply reasonable details,

14 including the victim's identity and the date and location of the robbery.

15          **B.    Particulars of weapons possession and distribution by Mr. Ellis.**

16         Count two alleges that Mr. Ellis's role in the racketeering conspiracy included

17 "obtaining and possessing weapons and making them available to other members [of the

18 enterprise]" (SSI 23). Elsewhere, the indictment alleges that Mr. Ellis possessed a firearm on at

19 least one particular occasion and that members of the Down Below Gang often hid weapons in

20 places to which more than one member had access. His requests for the dates on which the

21 weapons were possessed is therefore satisfied by the indictment. The indictment also makes

22 clear how weapons were made available to other members. Mr. Ellis also requests the number

23 and types of weapons he obtained, possessed and made available to others. This information is

24 too particular to be required from the government.

25          **C.    Particulars as to Mr. Ellis and the code of silence.**

26         Count two alleges that Mr. Ellis's role in the racketeering conspiracy included

27 "enforcing the code of silence to prevent members from cooperating with law enforcement"

28 (SSI 23). He requests details about this enforcement of the code, including dates on which the

United States District Court

For the Northern District of California

7

**United States District Court**
For the Northern District of California

enforcement occurred, how he enforced the code and the identity of the victims. Elsewhere in the indictment, the grand jury describes Ellis's efforts to enforce the code of silence against Jamaar Jackson with all the requisite details.

### D.    Particulars as to dealing narcotics by Mr. Ellis.

Count two alleges that Mr. Ellis's role in the racketeering conspiracy included selling narcotics (SSI 23). The rest of the indictment makes numerous allegations about violent actions taken by Mr. Ellis to support drug dealing. It does not, however, include him among the individuals who sold drugs directly. To the extent the government intends to prove this aspect of count two by showing that Mr. Ellis personally dealt drugs directly, it must supply the dates of such sales as well as the types and quantities of drugs sold.

### E.    Roles of unindicted conspirators whose names were *not* known.

Robert Calloway asks for an order compelling the government to tell him the role and involvement in the conspiracies alleged in counts one through three of all unindicted conspirators whose names were not known to the grand jury. The charges in counts one through three are detailed. Robert Calloway makes no argument as to how knowing the role and involvement of the unnamed conspirators will help him prepare for his defense. He named one decision in his favor but did not provide the Court with valid citation for it. There is no way to know if this decision supported his request. For these reasons, the request must be denied.

### F.    For the murders of Beverly Robinson and Kenya Taylor: (1) whether Robert Calloway fired the fatal shot, and (2) if not, what conduct of his facilitated the killing.

The indictment alleges that, on the date of Mr. Robinson's murder, Robert Calloway shot at Mr. Robinson. Mr. Calloway received a statement of a witness alleging that he ran after and shot at the victim. That is enough information for him to prepare his defense. The indictment also alleges that Mr. Taylor was killed by Robert Calloway and Edgar Diaz, at the behest of Redacted Defendant No. 1. It does not, however, allege what role Mr. Calloway played in that killing. Whether or not Robert Calloway fired fatal shots is an issue that expert

1   discovery on ballistics and forensics may clarify.  In any event, when several bullets enter a

2   person's body and he or she dies, it is often impossible to determine which of the bullets killed

3   the victim.  The request for information on whether Robert Calloway fired the fatal shots must

4   be denied.  This order, however, interprets his request also to ask for other details of his role in

5   the killing of Mr. Taylor.  The government must disclose what particular role Robert Calloway

6   played in the killing of Kenya Taylor.

**G.    Particulars about predicate acts to pattern of racketeering activity,**
**counts ten and twelve.**

9   Counts ten and twelve allege murder in aid of racketeering.  Robert Calloway asks the

10  government to detail the predicate acts that justify calling the enterprise at issue a racketeering

11  organization.  The indictment provides details on thirty acts in furtherance of racketeering in

12  count two.  Counts ten and twelve expressly state that the racketeering enterprise referred to is

13  that described in count two.  Count two describes particulars of the alleged racketeering acts.

14  Count ten and twelve list the statutes violated by the enterprise's racketeering activity  (SSI at

15  50, 52 (counts ten and twelve)).  These allegations provide sufficient notice of the particulars of

16  the predicate acts relevant to counts ten and twelve.

**H.    Particulars of Beverly Robinson killing.**

18  Mr. Ellis and Mr. Rollins are charged with killing Beverly Robinson as an overt act in

19  support of the drug-dealing conspiracy in count one, as a racketeering act in count two and as

20  murder in aid of racketeering in count ten.  Nowhere in the indictment are their roles in this

21  killing detailed, except that they were played on the date of Beverly Robinson's death and that

22  they participated in the killing with other, named defendants.  Mr. Rollins and Mr. Ellis need

23  some information as to their role in this act in order to defend themselves.  The government is

24  required to state what particular role they played in the killing.  The other defendants charged

25  with killing Mr. Robinson did not ask for particulars on their roles, except Robert Calloway.

26  The reason why he is not entitled to receive more information is given above.  Because the

27  others who are charged with killing Mr. Robinson have not alleged or demonstrated that their

28

**United States District Court**
For the Northern District of California

9

United States District Court

For the Northern District of California

1    roles in the crime are unclear, the government is not required to provide information beyond the

2    roles of Mr. Rollins and Mr. Ellis.

3        Mr. Ellis also asks for the way in which Robinson's killing furthered the goals of the

4    charged conspiracies. The government specifies that the killing was done to "preserve, protect

5    and enhance the power, territory, and reputation of the conspiracy and its members" (SSI 10). It

6    is unclear if defendant wants more. If he does, the request is denied. The request would be

7    applicable to all overt acts the government alleged. The government did not have to allege all

8    73 of these acts. To now require excruciating detail of the prosecutors would only punish them

9    for the high level of disclosure they already made.

10        Mr. Ellis also asks the government to "identify the theory under which Dornell Ellis is

11    allegedly liable for [the] murder [of Beverly Robinson]" (Br. 11, Docket No. 413). This request

12    calls for a government legal theory. There is apparently conflicting authority on whether the

13    government's theory of a case is the proper subject of a bill of particulars. In *Yeargain v.*

14    *United States*, 314 F.2d 881, 882 (9th Cir. 1963), the court stated: "A defendant is not entitled

15    to know all the evidence the government intends to produce, but only the theory of the

16    government's case." In *Rose v. United States*, 149 F.2d 755, 758 (9th Cir. 1945), the court

17    stated: Appellants . . . had demanded particulars as to . . . how conspiring to violate such

18    provisions constituted an offense. . . . The purpose of a bill of particulars is to secure facts, not

19    legal theories. The district court did not abuse its discretion in denying the bills." In each

20    decision, it appears that the court was using the word "theory" or "theories" to distinguish one

21    type of requested material from another. In *Yeargain*, the court was apparently distinguishing

22    the government's evidence from the theory of its case. It appears that "theory of the

23    government's case" in that decision was meant to designate the government's theory of *events*,

24    as opposed to information on its evidence of those events. In *Rose*, the court was apparently

25    differentiating between the facts of the case from the legal theories by which the government

26    planned to prove liability. *Yeargain* and *Rose* lead to the conclusion that evidence and legal

27    theories are not proper subjects of bills of particulars but that the government's theory of the

28    facts of a case is a proper subject of such bills. This aspect of Mr. Ellis's request seeks a legal

10

1  theory, not the government's alleged version of events.  It therefore is denied.  Nevertheless, the

2  government must describe his role in the Beverly Robinson killing.

### I.    How RICO conspiracy affected interstate and foreign commerce.

4      Mr. Ellis asks that the effects on interstate and foreign commerce be specified.  The

5  allegations that the Down Below Gang trafficked in heroin, cocaine, MDMA and marijuana —

6  all products for which there likely are national and/or international markets — is sufficient to

7  describe how the RICO conspiracy reached beyond California's borders.

### J.    Agreements on acts conspirators would commit.

9      Mr. Ellis asks that the government identify the acts of racketeering that he agreed a

10  conspirator would commit in conducting the affairs of the enterprise, as alleged at SSI 24.

11  There is enough information in the indictment on this point.  Mr. Ellis is alleged to have

12  engaged in at least two racketeering acts that required agreement between him and defendant

13  Edgar Diaz: the conspiracies to deal narcotics and to murder Beverly Robinson.

### K.    Whether alleged conspirators are members or associates of a gang.

15      Mr. Johnson asks whether the alleged conspirators in count one are members or

16  associates of a gang (Br. 2, Docket No. 392).  He also asks whether he is a member or associate

17  of a gang in the context of this conspiracy.  All of the twelve defendants in count one are listed

18  in count two as being members of the Down Below Gang, except for Paris Ragland, Ronnie

19  Calloway and Allen Calloway.  Mr. Johnson thus knows that he is accused of being a member

20  of a gang and that all but three of the other members of the drug conspiracy charged in count

21  one were members of the same gang.  This information is sufficient.

### L.    Purposes fulfilled by Don Johnson in drug conspiracy.

23      Don Johnson asks which of the purposes of the drug conspiracy that are described in

24  count one he fulfilled (Br. 2–3, Docket No. 392).  This information is in the indictment.  The

25  listed purposes of the conspiracy were to

26      "enrich the members of the conspiracy; to create, maintain and
       control a market place for the distribution of its controlled
27      substances; to enforce discipline among members of the
       conspiracy; to protect the conspiracy and its members from
28      detection, apprehension and prosecution by law enforcement; to
       intimidate and prevent persons from testifying as witnesses in

United States District Court

For the Northern District of California

11

1

2

3

> criminal prosecutions against members of the conspiracy; to prevent, thwart, and retaliate against acts of violence perpetrated by rivals against the conspiracy and its members; and to promote and enhance the reputation and standing of the conspiracy and its members"

4   (SSI 3–4). The indictment also states that Mr. Johnson did the following "in order to preserve,

5   protect, and enhance the power, territory, and reputation of the conspiracy and its members":

6   possess firearms, including a .45- caliber semi-automatic handgun and 7.62-mm assault rifles,

7   kill Beverly Robinson, shoot at members of the Towerside and Up the Hill gangs and attempt to

8   kill Gowan McLin and Avery Clark. It alleges that he possessed marijuana with intent to

9   distribute it on two occasions and that he killed Jaquain Williams with a 9-mm semi-automatic

10  handgun in retaliation for his suspected cooperation with police. This is more than enough to

11  describe the purposes of the enterprise that Mr. Johnson fulfilled.

12              **M.      Cities and street addresses where conspiratorial acts committed.**

13              Mr. Johnson asks to be told the cities and street addresses where conspiratorial acts

14  alleged in count two were committed. The indictment describes the Down Below Gang's

15  territory, including the streets that bordered it. It also states that one racketeering act in which

16  Mr. Johnson allegedly participated, conspiracy to murder members of the Up the Hill gang, took

17  place when he "walked onto Blythedale Avenue between Brookdale Avenue and Santos Street"

18  (SSI 32). This is enough detail on where the conspiracy took place for Mr. Johnson to be able

19  prepare his defense. This ruling also addresses Mr. Rollins's request for the "precise

20  parameters" of the territory the government claims he was protecting by his conduct in counts

21  one, two and three.

22              **N.      Whether count two charges all acts Don Johnson committed as part**

23  **of the conspiracy.**

24              This request seeks information beyond the scope of that needed to enable Mr. Johnson to

25  prepare his defense to the acts actually alleged.

26              **O.      Whether Mr. Johnson was a member or associate of the Down Below**

27  **Gang.**

28

United States District Court

For the Northern District of California

12

1    This information is in the indictment, which states that he was a member of the Down

2    Below Gang (SSI 21).

3    **P.    The difference between members and associates of the Down Below**

4    **Gang.**

5    This request seeks information beyond the scope of that needed to enable Mr. Johnson to

6    prepare his defense.  The racketeering enterprise was the Down Below Gang.  Whether a person

7    was an associate or a member of the gang makes no apparent difference as to culpability under

8    count two.

9    **Q.    Significant differences between gang names.**

10    Don Johnson asks whether there is a difference, for the purposes of defining the

11    racketeering enterprise, between Down Below Gangsters, on the one hand, and DBG, 324,

12    Down the Hill, Swamp Boys, Sunnydale, Sunnydale Gang, Ride-2-Hard, Border Brothers,

13    Borderline and Up the Hill, on the other hand.  The differences are spelled out in the indictment.

14    DBG, 324, Down the Hill, Swamp Boys and Sunnydale were synonyms for Down Below

15    Gangsters (aka Down Below Gang).  Down Below Gang was a set of the broader Sunnydale

16    Gang.  In addition there were other sets:  Ride-2-Hard, Border Brothers, Borderline and Up the

17    Hill(SSI 16).

18    **R.    Whether Mr. Johnson was a member of the other sets of the**

19    **Sunnydale Gang.**

20    This request seeks information beyond the scope of that needed to enable Mr. Johnson to

21    prepare his defense.  He is only accused of being a member of one enterprise, the Down Below

22    Gang, which the indictment makes clear was distinct from the other sets of the Sunnydale Gang.

23    **S.    How Mr. Johnson enforced code of silence, as alleged in count two.**

24    The indictment provides this information.  Mr. Johnson is accused of killing Jaquain

25    Williams because he was suspected of cooperating with law enforcement (SSI 13, 35).

26    **T.    Details as to counts nineteen and twenty.**

27    Mr. Rollins asks to know the weapon used in the assaults alleged in counts nineteen and

28    twenty.  The counts charge armed assault in aid of racketeering.  The underlying assaults are

**United States District Court**
For the Northern District of California

13

defined in terms of violating California Penal Code Section 245(a)(2). That subsection only criminalizes assaults with firearms. This is enough specificity to allow Mr. Rollins to prepare his defense.

He also asks to know the nature of the assaultive conduct and what role he is alleged to have played it. The first half of this request is too vague to grant. The second half is granted because nowhere in the indictment is Mr. Rollins's role in these assaults detailed. He needs some information on this point in order to defend himself. The government is required to state what particular role Mr. Rollins played in the assaults. Although there were other defendants allegedly involved in the assaults, they are not entitled to details on their roles because they did not specifically request it as to them.

**U.    Details as to counts 62, 64–65, 67 and 77.**

Mr. Rollins asks to know whether he is accused of using, carrying or possessing the firearms connected to his role in the murders of Kenya Taylor and Beverly Robinson. Mr. Rollins claims that this information is important because each action — using, carrying and possessing — carries a "vastly different" sentence from the others. This is not true. In both counts, he is charged under 18 U.S.C. 924(c)(l)(A)(I), which carries but one sentence: imprisonment for not less than five years. He also asks to know "the nature of the gun involved in each count" (Br. 3, Docket No. 434). So do Robert Calloway and Dornell Ellis, who each are charged with using a firearm in connection with at least one of the same murders. As Calloway points out, the type of firearm involved can increase the minimum prison term significantly, from five years to ten or thirty years. *See* 18 U.S.C. 924(c)(1)(A)(I) (minimum five-year sentence) and 18 U.S.C. 924(c)(1)(B) (minimum sentences of ten and thirty years, depending on gun type). This information is therefore important, if available, to these defendants in preparing their cases. If the government knows the type of firearms used in counts 62, 64–65, 67 and 77, it should provide that information to defendants. Other defendants charged in gun counts did not ask for this information, so they are not entitled to it.

Similarly, Robert Calloway asks the government to specify whether it believes that he used and carried a firearm while committing the Robinson and Taylor murders, or whether it

believes that he possessed a firearm in furtherance of the murders. At such an abstract level, these are legal distinctions, not factual distinctions. Furthermore, both actions are charged under the same subsection, 18 U.S.C. 924(c)(1)(A)(I) and carry the same penalty. It is therefore unclear what practical difference the distinction made by Mr. Calloway can make. He therefore has not carried his burden of showing that the information is necessary to prepare his defense.

### V.    "Nexus" requests by defendant Emile Fort.

Mr. Fort requests descriptions of the nexus (1) between him and the Down Below Gang and (2) between the Down Below Gang and the crimes charged against him that were in purported furtherance of the gang. The indictment is full of information on these general topics. If Mr. Fort wants something more specific, his request fails to communicate what he specifically desires. The requests therefore are denied.

### W.    Special findings.

In the Notice of Special Findings at 4.d., Robert Calloway is alleged to have put others at grave risk of death during the murder of Beverly Robinson (SSI 90). He asks for their names. Whether the alleged crime placed others at grave risk of death is a fact that will not come into play unless Robert Calloway is convicted of count ten, provided the government is then seeking the death penalty against him. The same is true of his request for details on how his role in the murder of Beverly Robinson involved torture and serious physical abuse. The requests are therefore not necessary to prepare his defense at this time.

### CONCLUSION

For the reasons stated, the motions for bills of particulars are **DENIED** except on the following points:

1.    The government must provide the names of the intended victims of Rickey Rollins in count eighteen or, if one or more of the names is not known to the government, all information that the government has that describes that victim or those victims.

2.    The government must disclose what particular role Robert Calloway played in the killing of Kenya Taylor.

**United States District Court**
For the Northern District of California

3.   If the government plans to prove that Mr. Ellis robbed someone as part of the racketeering conspiracy in count two, it must supply reasonable details of this allegation to him, including the identity and, if the name is not known, description of the victim, and the date and location of the robbery.

4.   To the extent the government intends to prove the narcotics-dealing allegations against Mr. Ellis in count two by showing that he dealt drugs directly, it must supply the dates of such sales as well as the types and quantities of drugs sold.

5.   The government is required to state what role Mr. Ellis and Mr. Rollins played in the killing of Beverly Robinson.

6.   The government is required to state what role Mr. Rollins played in the assaults on Cordis Webb and Paulette Jackson.

7.   If the government knows the type of firearms used in the crimes of violence charged in counts 62, 64–65, 67 and 77, it should provide that information.

The above facts should be provided in a bill of particulars served on defendants by JULY 19, 2006.

**IT IS SO ORDERED.**

Dated: June 30, 2006

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE